UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:20-cv-60849-RAR
IN ADMIRALTY

YACHT MANAGEMENT SOUTH FLORIDA, INC.,
a Florida corporation,

  Plaintiff,

v.

M/V PRIVEE,
a 2004 95' Sunseeker, Official No. 1249993,
her engines, equipment, tackle, furnishings, etc., *In rem*,
PRIVEE MANAGEMENT ONE, LLC,
a Delaware limited liability company, *in personam*,
and PHILIP W. CYBURT, *in personam*,

  Defendants.

_____/

**DEFENDANT M/V PRIVEE AND PRIVEE MANAGEMENT ONE, LLC'S ANSWER,**

**AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

  M/V PRIVEE ("Yacht") and PRIVEE MANAGEMENT ONE, LLC ("PMO") (collectively "Defendants"), by and through their undersigned counsel, file their Answer, Affirmative Defenses and Counterclaim to Plaintiff's Verified Complaint as follows:

**JURISDICTION AND VENUE**

1. Admitted.

2. Admitted only as to the Yacht and PMO.

**PARTIES**

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

## GENERAL ALLEGATIONS

7. Admitted the Yacht is owned by PMO and that PMO brought the Yacht to Yacht Management's ("YM") shipyard.  Remainder Denied.

8. Admitted PMO owns the Yacht and that PMO entered into the "Service Agreement with Yacht Management", a true and correct copy. Remainder Denied.

9. Denied.

10. Denied.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

15. Denied. Denied that the attachments are a true and correct copy.

16. Admitted that YM recorded a Notice of Claim of Lien with the U.S. Coast Guard and admitted that the attachment is a true and correct copy. Remainder denied.

17. Denied.

18. Denied.

19. To the extent a response is required, denied.

## COUNT I

20. Defendants re-alleges and reasserts its responses to paragraphs 1 through 19 as if fully set forth herein.

21. Denied.

22. Denied.

**WHEREFORE**, Defendant M/Y Privee respectfully requests this Court dismiss Yacht Management's claim for foreclosure on maritime lien and grant such other relief as the Court deems just and proper.

   a. To the extent, a response is required, denied.

   b. To the extent, a response is required, denied.

   c. To the extent, a response is required, denied.

   d. To the extent, a response is required, denied.

   e. To the extent, a response is required, denied.

## COUNT II

23. Defendants re-alleges and reasserts its responses to paragraphs 1 through 19 as if fully set forth herein.

24. Admitted that PM entered into a Service Agreement with YM. Admitted the attachment is a true and correct copy.

25. Denied.

26. Denied.

27. Denied. Denied that the attachments are a true and correct copy.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. To the extent a response is required, denied.

**WHEREFORE**, Defendant Privee Management One, LLC respectfully requests this Court dismiss Yacht Management's claim for breach of written contract and grant such other relief as the Court deems just and proper.

## COUNT III

33. Defendants re-alleges and reasserts its responses to paragraphs 1 through 19 as if fully set forth herein.

34. Denies without knowledge or information sufficient to form a belief about the truth of an allegation.

35. Denies without knowledge or information sufficient to form a belief about the truth of an allegation.

36. Denies without knowledge or information sufficient to form a belief about the truth of an allegation.

37. Denies without knowledge or information sufficient to form a belief about the truth of an allegation.

38. Denies without knowledge or information sufficient to form a belief about the truth of an allegation.

39. Denies without knowledge or information sufficient to form a belief about the truth of an allegation.

40. Denies without knowledge or information sufficient to form a belief about the truth of an allegation.

41. Denies without knowledge or information sufficient to form a belief about the truth of an allegation.

42. Denies without knowledge or information sufficient to form a belief about the truth of an allegation.

## AFFIRMATIVE DEFENSES

Defendants M/Y Privee and Privee Management One, LLC, reiterates its responses to YM's allegations in paragraphs 1 through 19 above, and for its affirmative defenses alleges as follows:

1. The Plaintiff's claims are blocked by accord and satisfaction as all amounts due for the actual work performed was paid and YM failed to fully perform, provide warranty service, or provide work in accordance with industry standard.

2. Plaintiff's damages, if any, were caused by non-parties who are not party to this action therefore comparative fault bars Plaintiff's claims.

3. Plaintiff first breached the purported contract by failing to perform the work in a timely manner, at industry standard, and by failing to complete the work or perform warranty repairs.

4. Plaintiff's claims are barred by the doctrine of unclean hands because Plaintiff overcharged for shoddy work.

5. Plaintiff failed to mitigate its damages by performing unnecessary and duplicative work.

6. Defendant fully performed by paying more than a reasonable amount for the work completed by Plaintiff. Plaintiff breached by failing to complete the work in a timely manner or in keeping with industry standard.

### M/Y PRIVEE AND PRIVEE MANAEGMENT ONE, LLC'S COUNTERCLAIM

The M/Y PRIVEE, by and though its owner PRIVEE MANAGEMENT ONE, LLC ("Counter-Plaintiffs") and undersigned counsel, files their Counterclaim as follows:

### JURISDICTION AND VENUE

1. This is a cause within the admiralty and maritime jurisdiction of this Honorable Court founded upon Article III of the United States Constitution and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and further pursuant to 28 U.S.C. § 1333 and 42 U.S.C. § 31342, as this is an action to recover for the breach of the warranty of workmanlike performance and for negligence in repairing a vessel.

2. M/V PRIVEE, a 2004 95' Sunseeker, Official No. 1249993, her engines, equipment, tackle, furnishings, etc. (the "Vessel"), is a luxury motor vessel which underwent the repairs relevant to this case in Broward County, Florida.

3. PRIVEE MANAGEMENT ONE, LLC ("PMO"), is a limited liability company organized and existing under the laws of the State of Delaware.

4. Plaintiff, YACHT MANAGEMENT SOUTH FLORIDA, INC. ("YM"), is a corporation organized and existing under the laws of the State of Florida. Yacht Management maintains its principal place of business at: 3001 West State Road 84, Fort Lauderdale, Florida 33312.

5. The Court also has general personal jurisdiction over YM pursuant to Fed. R. Civ. P. 4(k) and Fla. Stat. § 48.193 because YM:

   a. Is incorporated in the State of Florida; and/or

   b. Had an office or agency in this state and/or county; and/or

    c. Entered into a contract with a forum selection clause selecting and consenting to Broward County as the exclusive jurisdiction and venue; and/or

    d. Engaged in substantial activity within this state

6. In addition, the Court has personal jurisdiction over YM because it has had continuous and systematic contacts with the state of Florida including agents and/or members and/or employees, acting in the scope of their agency or employment, who carried out the business of YM in Florida by being incorporated in Florida and holding themselves out to have a shipyard in Broward County.

7. In addition to owning, using, possessing, renting or leasing a shipyard in Florida, YM had regular and systematic business communications with individuals and business in this state to offer yacht repair services to Florida residents.

8. Due process is met as YM conducted significant business in this state for its business purposes such that YM should reasonably expect to be hailed into court.

## RELEVANT FACTS

9. On or about April 26, 2019, Defendant, PMO brought the Yacht to YM's shipyard in Fort Lauderdale to undergo extensive repairs for fire damage and entered into a contract with YM to repair said damage.

10. Upon information and belief, YM agreed to complete the work for an amount it estimated to be $521,000.00.

11. By May 2019, without any explanation YM had increased their total repair estimate to $630,994.46.

12. Finally, and once again without warning or explanation, YM's total repair estimate jumped to $864,227.21 when YM filed its Complaint against the Counter-Plaintiffs in

this case. To date, YM has provided no explanation as to why the total estimate increased from $521,000.00 to $864,227.21.

13. Counter-Plaintiffs requested a scope of work from YM multiple times throughout the project but these requests were always denied and rejected by YM.

14. Pursuant to the Service Agreement, the Counter-Plaintiffs paid down payments on the estimates that were provided.

15. However, on numerous occasions, YM failed to abide by its contractual obligation to provide the Counter-Plaintiffs with an estimate before the work was started and instead, YM just provided an invoice after the charges were incurred, *e.g.* not providing an estimate for the Crew AC (Invoice #20246) and the Underwater Lights (Invoice #20258).

16. Furthermore, numerous invoices were amended and the costs to the Counter-Plaintiffs were increased exponentially without any explanation.

17. Counter-Plaintiffs have also fully paid on certain invoices, however YM has failed to complete work that the Counter-Plaintiffs have paid for.

18. YM has also been consistently overcharging the Counter-Plaintiffs in regards to the difference between the estimate and the final invoice. For example on the A/V System repairs, YM claims that they provided the Counter-Plaintiffs with an estimate of $25,742.73 (Estimate #21989), however Counter-Plaintiffs received a different estimate from YM regarding the A/V Systems that estimated the repairs would cost $10,700 (Estimate #21531). *See* **Exhibit A** – Estimate 21531. The final invoice, #19784 for the repairs suddenly showed that the repairs cost $25,742.73, which shows a 141% increase between the estimate and the final invoice. *See* **Exhibit B** – Invoice 19784.

19. Furthermore, on the Plumbing System repairs, YM estimated it would cost $16,157.00 (Estimate #21485), however the final invoice, #20239, stated that it cost $33,541.59, which is an increase of 108% in cost. *See* **Exhibit C** – Estimate 21485; *see* **Exhibit D** – Invoice 20239.

20. YM also consistently delayed providing the final invoices, sometimes with the delays spanning a month after the date printed on the invoices.

21. There have also been numerous problems with the quality of YM's workmanship, including but not limited to:

    a. Fire suppression systems were missing pressure switches;

    b. Auxiliary air conditioning was not properly maintained and excessive temperatures were recorded throughout the refit project;

    c. YM installed 'used' light fixtures rather than 'new' light fixtures;

    d. Some of the installed light fixtures were non-functioning;

    e. Transom and deck hardware was missing and not installed;

    f. Paint repairs were incomplete and required finishing, for example on the boot stripe, inner and outer bulwark, transom and brow;

    g. Junction box for the water heater was improperly mounted and missing fittings which failed to make it water tight;

    h. Exposed wiring coming into the junction box for the water heater;

    i. Bilge area under the forward VIP cabin sole had a water line and evidenced standing water in the area for an extended length of time which led to damage to the wood frames;

    j. Multiple cabinet doors were improperly installed and had a loose fit.

22. To date, the repairs for the fire damage is still incomplete and multiple items require extensive work.

## COUNT I: NEGLIGENCE

23. The Counter-Plaintiffs re-allege and incorporate by reference paragraphs 1 through 22 as though set forth herein.

24. YM had a duty to use reasonable care in the performance of work on the Vessel.

25. YM was negligent in the performance of that work on the Vessel for the reasons aforesaid.

26. As a direct and proximate result of YM's negligence, Counter-Plaintiffs have suffered damages, including but not limited to, the cost of repair and restoration of the Vessel, diminution in value of the Vessel, and the cost of a marine surveyors.

WHEREFORE, the Counter-Plaintiffs respectfully request this Court enter judgment in its favor against YM for all damages incurred, together with costs, and prejudgment interest, and for all other relief this Court deems just and proper.

## COUNT II: BREACH OF EXPRESS WARRANTY OF WORKMANSHIP

27. The Counter-Plaintiffs re-alleges and incorporates by reference paragraphs 1 through 22 as though set forth herein.

28. YM had a duty to perform its work in a good and workmanlike manner and expressly warranted that it had done so in the Service Agreement.

29. The Service Agreement states: "Yacht Management warrants to Owner that its services will be performed in a competent manner and will be free from defects in workmanship and materials. . ." [DE 1-1].

30. As a direct and proximate result of YM's breach of the express warranty of workmanship, Counter-Plaintiffs have suffered damages, including but not limited to, the cost of repair and restoration of the Vessel, diminution in value of the Vessel, and the cost of a marine surveyors.

WHEREFORE, the Counter-Plaintiffs respectfully request this Court enter judgment in their favor against YM for all damages incurred, together with costs, and prejudgment interest, and for all other relief this Court deems just and proper.

### COUNT III: UNJUST ENRICHMENT

31. The Counter-Plaintiffs re-alleges and incorporates by reference paragraphs 1 through 22 as though set forth herein.

32. The Counter-Plaintiffs conferred a monetary benefit on YM in the form of monies paid for repair work.

33. YM appreciates or has knowledge of the benefits conferred directly upon it by Counter-Plaintiff.

34. The monies paid for the purchase of goods and services by Counter-Plaintiffs to YM during the period of time that YM was involved in repairing the fire damage aboard the vessel were supposed to be used by YM, in part, to pay for the parts and labor for the installation.

35. YM failed to perform its work to a level at or above industry standard and billed more than the amount agreed therefore Counter-Plaintiffs overpaid YM for the parts and services purchased.

36. Under principles of equity and good conscience, YM should not be permitted to retain the money paid because YM failed to provide adequate mechanical and other services to Counter-Plaintiff Vessel, which were paid for but not provided in a workmanlike manner.

37. As a result of YM's conduct as set forth herein, Counter-Plaintiffs suffered damages and losses as stated above, including monies paid for YM's services that Counter-Plaintiffs would not have purchased had YM disclosed the material fact that it lacked the ability to properly perform the services.

38. It would be inequitable under established unjust enrichment principles for YM to be permitted to retain any of the financial benefits, monies, profits and overcharges derived from YM's conduct.

39. YM should be compelled to disgorge all funds received by YM in connection with the work performed on the Vessel.

WHEREFORE, Counter-Plaintiffs respectfully request that this Court enter judgment against YM for damages, interest, court costs, and all other relief recoverable under the applicable law or as this Court deems just and proper.

## COUNT IV: ACCOUNTING

40. The Counter-Plaintiffs re-allege and incorporate by reference paragraphs 1 through 22 as though set forth herein.

41. YM and Counter-Plaintiffs were engaged in a complicated business relationship beginning on April 26, 2019 for the repair of the Yacht for fire damage which created at least a hundred estimates and invoices spanning over the last year.

42. YM has significantly overcharged the Counter-Plaintiffs and has previously failed to provide all invoices and estimates on a timely manner.

43. Due to YM's significant overcharging on the invoices, the inconsistencies between the invoices and estimates and the non-existent estimates has made it clear that the fact-finder could not be reasonably able, based on the time and effort required, to assess the evidence and reach an accurate value of the amount owed to the Counter-Plaintiffs.

44. As a result of the aforementioned, YM has received money, a portion of which is due to the Counter-Plaintiffs, as previously alleged.

45. Counter-Plaintiffs now demand an accounting during the above mentioned time period.

46. YM either has refused to provide an accounting, or has provided an incomplete accounting of the fire repair transactions.

47. YM's failure to provide the full accounting to the Counter-Plaintiffs have resulted in damages to Counter-Plaintiffs.

WHEREFORE, Counter-Plaintiffs demands an accounting of the business relationship and payments in full of its portion of the net revenues therein, pre-and post-judgment interest, and all other relief deemed just and equitable by the Court.

Dated: June 16, 2020                    Respectfully Submitted,

**MOORE & COMPANY, P.A.**
*Counsel for Defendants*
255 Aragon Avenue, 3rd Floor
Coral Gables, Florida 33134
Telephone: (786) 221-0600
Facsimile: (786) 221-0601
Email:  michael@moore-and-co.com
Email:  kvartak@moore-and-co.com

<u>s/ Michael T. Moore</u>
Michael T. Moore, Esq.
Florida Bar No. 207845
Kavan Vartak, Esq.
Florida Bar No. 1017058

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 16, 2020, the foregoing document was served

through the electronic docketing system on all counsel of record.