**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No: **20-60849-CV-RUIZ/STRAUSS**

YACHT MANAGEMENT
SOUTH FLORIDA, INC.,

     Plaintiff,

v.

M/V PRIVEE, a 2004 95' Sunseeker,
Official No. 1249993, her engines, equipment,
tackle, furnishings, etc., *in rem*, *et al.*,

     Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART RENEWED MOTION TO QUASH AND OBJECTIONS TO PLAINTIFF'S SUBPOENAS TO KARI E. OVENS AND RSC INSURANCE BROKERAGE, INC. ("MOTION TO QUASH") (DE 77)**

**THIS CAUSE** is before me upon Defendants' Motion to Quash (DE 77) requesting that the Court quash two (2) subpoenas and stating Defendants' objections to the two (2) subpoenas, which Plaintiff served upon non-party witnesses.[1]  Plaintiff has filed a response ("Response"). (DE 78).  Having reviewed the Motion to Quash and the Response, and being otherwise duly advised, Defendants' Motion to Quash is **GRANTED IN PART AND DENIED IN PART** for the reasons stated herein.

**I.**     **BACKGROUND**

This case arises from a dispute pertaining to the payment for repairs to the Defendant vessel ("Vessel"). (DE 25 at ¶¶8-20).  The Verified Amended Complaint alleges admiralty jurisdiction

---

[1] Defendants' Motion to Quash identifies the non-parties as: (1) Defendants' accountant, Kari E. Evans ("Accountant"); and, (2) Defendants' insurance broker, RSC Insurance Brokerage, Inc. ("Insurance Broker"). (DE 77).

pursuant to 28 U.S.C. § 1333 and brings three Counts: one count for Foreclosure on Maritime Lien and two counts for Breach of Written Contract. *Id.* at ¶¶21-58. Defendants filed an amended counterclaim that brings five Counts for: Breach of Express Warranty of Workmanship, Breach of Contract, Accounting, Negligence, and Unjust Enrichment. (DE 43 at ¶¶24-59). On August 24, 2020, the District Court entered a scheduling order setting case deadlines including a deadline of January 26, 2021 for all discovery. (DE 56). On February 5, 2021, Defendants filed a motion to quash the two subpoenas now at issue, and I denied the motion because, *inter alia*, the discovery deadline had passed. (DE 71). On February 11, 2021, I ratified the agreement of counsel extending the discovery deadline to March 2, 2021 and set a discovery hearing. (DE 73; DE 74). Plaintiff moved to continue the discovery hearing after conferring with Defendants and agreeing upon alternative dates to hold the discovery hearing. (DE 75). On February 12, 2021, I cancelled the discovery hearing and ordered Defendants to file a renewed motion to quash, and I expedited Plaintiff's response. Thus, given the parties' compliance with the orders, the Motion to Quash (DE 77) is now ripe for review.

## II.     LEGAL STANDARDS

### A. Scope

"Fed. R. Civ. P. 45 does not identify irrelevance or overbreadth as reasons for quashing a subpoena." *Am. Fed'n of State, Cty. & Mun. Employees (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 476 (S.D. Fla. 2011). Nonetheless, courts "have treated the scope of discovery under a subpoena [ ] the same as the scope of discovery under Rule 26" and other discovery rules. *Id.* (citations omitted). Furthermore, courts treat Rule 45 motions to quash, which challenge relevancy, as motions for a protective order under Rule 26. *See Auto-Owners Ins. Co. v. Se.*

2

*Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (holding that "the Court may . . . deem [a party's] motion to quash as a motion for a protective order" and also holding that parties "have standing to move for a protective order if the subpoenas [issued to non-parties] seek irrelevant information") (citation omitted); *see also Bush Truck Leasing, Inc. v. Office Depot, Inc.*, No. 11-80026-CIV, 2011 WL 13228102, at *3 (S.D. Fla. May 9, 2011) (citations omitted). Accordingly, "a subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information." *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir.), *cert. denied sub nom. Jordan v. Georgia Dep't of Corr.*, 141 S. Ct. 251, 208 (2020).

> The scope of discovery under Rule 26 is as follows:
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "[I]nformation is relevant if it has a 'tendency to make a fact more or less probable' and 'the fact is of consequence in determining the action.'" *Jordan*, 947 F.3d at 1329 (quoting Fed. R. Evid. 401). Although the scope of discovery is broad, it is not without limits. For example, discovery is not permitted for exploratory purposes under the premise that the information obtained might conceivably become germane. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978).

In applying these principles, the party objecting to discovery must explain the specific and particular way in which a request is vague, seeks irrelevant information, is disproportionate, or is unduly burdensome. *See* Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B); *see also Democratic Republic*

3

*of Congo v. Air Capital Grp., LLC*, No. 12-CIV-20607, 2018 WL 324976, at *3 (S.D. Fla. Jan. 8, 2018) (quoting *Sallah v. Worldwide Clearing LLC*, 855 F. Supp. 2d 1364, 1376 (S.D. Fla. 2012) ("A party objecting on these grounds must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome.")).  Also, "when relevancy is not apparent, the burden is on the party seeking discovery to show the relevancy of the discovery request." *AFSCME Council 79*, 277 F.R.D. at 477.

### B. Privilege

Federal Rule of Evidence 501, which governs the determination of whether materials sought in discovery are privileged, provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;
>
> • a federal statute; or
>
> • rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.  Here, the parties agreed in a contract that Florida law would govern their disputes.  Therefore, Florida law applies here.  (DE 25-1 at ¶4).

A party invoking a privilege must establish its applicability.  *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003).  Accountant-client privilege statutes are narrowly construed.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick*, 742 So. 2d 328, 330 (Fla. 3d

4

DCA 1999), *approved*, 765 So. 2d 36 (Fla. 2000).  Florida's accountant-client privilege is set forth as part of the evidence code § 90.5055, Fla. Stat., and in Florida Statute's Section on "Public Accountancy," § 473.316, Fla. Stat., which states in relevant part:

**473.316. Communications between the accountant and client privileged**

(1) For purposes of this section:

(a) An "accountant" is a certified public accountant.

(b) A "client" is any person, public officer, corporation, association, or other organization or entity, either public or private, who agrees with an accountant or accountant's employer to receive professional services.

(c) A communication between an accountant and her or his client is "confidential" if it is not intended to be disclosed to third persons other than:

   1. Those to whom disclosure is in furtherance of the rendition of accounting services to the client.

   2. Those reasonably necessary for the transmission of the communication.

. . .

(2) A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications with an accountant when such other person learned of the communications because they were made in the rendition of accounting services to the client. This privilege includes other confidential information obtained by the accountant from the client for the purpose of rendering accounting advice.

Fla. Stat. § 473.316 (1)(a), (b), (c); Fla. Stat. § 90.5055 (same).

However, "Florida Statute 473.316 is clear that its accountant client privilege extends only to Florida-licensed CPA's" or those otherwise compliant with Fla. Stat. § 473.3141 with respect to Certified Public Accountants licensed in other states.  *See* Fla. Stat. § 473.3141; *Probinsky v. Probinsky*, No. 13-10097-CIV, 2014 WL 12621968, at *1 (S.D. Fla. Feb. 3, 2014); *Wireless Shop,*

5

*LLC v. TracFone Wireless, Inc.*, No. 18-23160, 2019 WL 2135666, at *1, n.4 (S.D. Fla. Feb. 28, 2019) (collecting cases).

## III.   ANALYSIS

Defendants object to the subpoenas on grounds that they are irrelevant, overly broad in scope and redundant. (DE 77 at 3). Furthermore, Defendants argue that the subpoena served upon the Accountant attempts to subpoena privileged information under both California law and Florida law. *Id.* at 3-6. Plaintiff responds that Florida law applies, which does not protect tax returns when they are relevant to the case as Plaintiff argues they are here. (DE 78 at 2-3). Plaintiff also argues that, given that the total amount in controversy exceeds half a million dollars in repairs and that Plaintiff determined during discovery that Defendants may have made material misrepresentations to the insurer, obtaining the subpoenaed records directly from the Insurance Broker is within the broad scope of permitted discovery under Federal Rule of Civil Procedure 26. *Id.* at 7-9. I address the arguments pertaining to each subpoena in turn.

### A.   Accountant Subpoena

The Subpoena to the Accountant seeks:

> All communications, including e-mails, and text messages, related to corporate tax returns for Privee Management One, LLC [("PMO")] for 2017-2020 [and] [c]opies of all corporate tax returns (including all attachments and schedules) for [PMO] for 2017-2020.

(DE 77-1 at 1). However, by letter dated February 15, 2021, Plaintiff agreed to limit the subpoena to: "All tax returns for [PMO] and Privee Management, LLC for the years 2017-2020, including all attachments and schedules." (DE 78-1 at 1-2).

6

### i. **Privilege**

Defendants assert standing to object to the subpoena to be served on the Accountant based on privilege. (DE 77 at 2) (citing *Chaikin v. Fid. & Guar. Life Ins. Co.*, No. 02 C 6596, 2003 WL 22715826, at *1 (N.D. Ill. Nov. 17, 2003) ("A party has standing to object to a subpoena directed at a nonparty when the party claims a 'personal right or privilege' regarding the documents sought.")). Defendants argue that the information sought is privileged under California and Florida accountant-client privileges and under Florida's law providing individuals with a right to financial privacy. (DE 77 at 2, 4).

Plaintiff does not dispute Defendants' standing. However, Plaintiff argues correctly that, as stated above, Florida law applies in this case because the parties contracted to have Florida law apply. (DE 78 at 2). Plaintiff also correctly argues that Florida's accountant-client privilege protects "communications" but not the tax returns. *Id.* at 2-3. *See* Fla. Stat. §§ 90.5055, 473.316.

I also find, however, that the subject tax returns are not subject to Florida's accountant-client privilege because Defendants have not demonstrated that the Accountant falls within the definition of a Certified Public Accountant under Florida's accountant-client privilege law. Fla. Stat. § 473.3141; *Probinsky*, 2014 WL 12621968 at *1. Defendants fail to carry their burden to show that the privilege applies. *Bogle*, 332 F.3d at 1358. Nowhere in Defendants' Motion to Quash is there discussion regarding how the Accountant qualifies as a Certified Public Accountant whose communications with clients would be subject to Florida's accountant-client privilege. Furthermore, financial information is discoverable under Florida law when relevant to damages' calculations under a breach of contract claim. *Florida Gaming Corporation of Delaware v. American Jai-Alai, Inc.*, 673 So.2d 523, 524 (Fla 4th DCA 1996). Here, the tax returns are relevant

7

to the calculations of damages pursuant to breach of contract claims as further discussed below. Therefore, for all of the above-stated reasons, Defendants' arguments pertaining to privilege as to the requested tax returns fail.

### ii. Relevance

Defendants do not carry their burden here to demonstrate why the subpoena, as limited to the specified corporate tax returns, requests irrelevant information. Specifically, Defendants object that "the requests are duplicative of prior produced records." (DE 77 at 3). Defendants also assert that the request is not proportional to the needs of the case and has no relevance to the issues in the case regarding whether Defendants owe Plaintiff money for work done and whether Plaintiff overcharged Defendants. *Id.* at 4-5. In support of their argument that the request for tax returns is duplicative, Defendants argue that Plaintiff has been provided Defendant PMO's bank statements, which reflect the flow of income and expenditures from December 2018 to December 2020. *Id.* at 5. Defendants contend that Plaintiff can more accurately determine Defendant PMO's lost charter profits by using the bank statements. *Id.*

Plaintiff, on the other hand, argues that Defendants "opened the door" to discovery of the tax returns by claiming a loss of significant charter income as a result of repairs that the Vessel needed after leaving Plaintiff's facility. (DE 78 at 4). Plaintiff further contends that deposition testimony revealed that the Accountant likely has financial records that will demonstrate the amount of income that was allegedly lost. *Id.* at 4-5. According to Plaintiff, the tax returns are necessary to determine the charter income generated by the Vessel before and after the Vessel was at Plaintiff's facility for repairs. *Id.* at 5. Plaintiff argues that the bank records that Defendants provided are insufficient because they do not explain the nature of the deposits and withdrawals

8

from the account and do not establish whether the Vessel was running at a profit or a loss.  *Id.*  Additionally, Plaintiff asserts that Defendants produced some tax documents, and Plaintiff now merely seeks the production of all of the tax returns for the 2017-2020 period.  *Id.* at 6.

The question of whether income tax returns are subject to discovery is within the sound discretion of the trial court.  *Fulenwider v. Wheeler*, 262 F.2d 97, 99 (5th Cir. 1959).[2]  Indeed, "such information need be only arguably relevant."  *Erenstein v. S.E.C.*, 316 F. App'x 865, 869–70 (11th Cir. 2008) (citing *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir.1997)).  Here, Plaintiff has established that the tax returns are relevant to quantifying the amount of lost charter income that Defendants allege occurred due to repairs that were required after the Vessel departed from Plaintiff's facility.  Defendants do not dispute that Plaintiff should have information that speaks to the lost charter income.  Rather, Defendants argue that Plaintiff should be able to determine the lost charter income from bank statements.  Bank statements, however, do not report income and loss as Plaintiff correctly points out.  Although I conclude that Defendants have not demonstrated irrelevance of the tax returns themselves, the broader request for "communications" is not facially relevant to determining the Vessel's income.  Plaintiff does not argue that "communications" are relevant and has agreed to limit the discovery request to tax returns.  Accordingly, I find that the Motion to Quash should be granted to the extent that the subpoena seeks information beyond the requested tax returns.

**Insurance Broker Subpoena**

The Subpoena to the Insurance Broker seeks:

---

[2] *Bartlett v. Allen*, 724 F.2d 1524, n.4 (11th Cir. 1984) ("Decisions of the Fifth Circuit handed down prior to October 1, 1981, are binding precedent on this Court unless and until overruled or modified . . . en banc.") (citation omitted).

1. All communications between Atlass Insurance Group and Phil Cyburt relating to insurance for the M/V PRIVEE, a 95-foot Sunseeker (Official Number 1249993).

2. All communications between Atlass Insurance Group and Anna Cyburt relating to insurance for the M/V PRIVEE, a 95-foot Sunseeker (Official Number 1249993).

3. All documents reflecting any insurance claims submitted by or on behalf of [PMO] or Privee Management LLC for property damage or injury related to the M/V PRIVEE, a 95-foot Sunseeker (Official Number 1249993).

4. All applications for insurance submitted by or on behalf of [PMO] or Privee Management LLC for the M/V PRIVEE, a 95-foot Sunseeker (Official Number 1249993).

5. All policies of insurance procured by Atlass Insurance Group for [PMO] or Privee Management LLC for the M/V PRIVEE, a 95-foot Sunseeker (Official Number 1249993).

(DE 77-2 at 1-2). However, by letter dated February 15, 2021, Plaintiff agreed to limit the subpoena to only request numbers 3 through 5. (DE 78-1 at 1).

Defendants argument as to why the subpoenaed insurance records, as Plaintiff has limited the request, are not relevant is unavailing. Their argument speaks to why courts preclude evidence about insurance benefits, which Plaintiff makes clear is not the purpose for its request, and why the subject insurance policy is disconnected from the case, which Plaintiff successfully refutes. Defendants argue that the insurance contracts sought by Plaintiff are irrelevant because they exist for Defendants' benefit, not for Plaintiff's benefit. (DE 77 at 6-7) (citing *FDIC v First Am. Title Ins. Co.*, 611 F. App'x 522, 534 (11th Cir. 2015) for the application of Florida's collateral source rule to actions in contract as well as in tort, which bars the introduction of evidence regarding collateral insurance benefits and the setoff of these benefits from a damage award). Defendants also argue that the Insurance Broker's policy only took effect on May 15, 2020, after Plaintiff

10

arrested the Vessel on May 13, 2020, and is not tethered in any way to the repair process at Plaintiff's facility. (DE 77 at 7). Further, Defendants aver that they have not collected any monies from the Insurance Broker's policy on the fire damage that occurred before the policy went into effect. *Id.* Defendants also argue that only Defendants, and not any insurer, will be liable to Plaintiff for any unpaid amounts under the parties' agreement. *Id.* at 7-8. Defendants acknowledge producing the Insurance Broker's policy during discovery but argue that the subpoena seeks completely irrelevant documents because all of the Insurance Broker's records "will begin after this litigation had begun." *Id.* at 8. On this basis, Defendants also argue that the records are not proportional to the needs of the case, which Defendants describe as seeking to resolve disputes about contractual and lien issues. *Id.*

Plaintiff, on the other hand, argues that the documents it seeks, as limited, are relevant because, in part, they pertain to claims and defenses. Plaintiff argues that the beneficial owner of the Vessel gave testimony in a deposition that conflicted with a copy of the insurance application to the Insurance Broker, which Defendants had produced. (DE 78 at 7-8). Specifically, Plaintiff avers that discovery revealed that Defendants may have made material misrepresentations to the insurer about the scale, scope and quality of repairs to the Vessel as evidenced, in part, by the subject insurance application suggesting that the Vessel's damage was limited to under $17,000 from smoke due to a "small electrical fire in the crew quarters." *Id.* at 7. Plaintiff argues that its more limited request for documents pertaining to claims, applications and policies are relevant because: (1) a prior inconsistent statement on an application signed by Defendants is admissible for impeachment purposes; (2) evidence of prior claims on the Vessel represent potential pre-

11

existing defects for which Plaintiff should not be held responsible; and (3) evidence of subsequent claims demonstrate that Defendants filed their counterclaim in bad faith. *Id.* at 8-9.

I find that Plaintiff has established that its subpoena, as limited, seeks relevant information. Plaintiff's explanation indicates that the information bears on claims and defenses, and such information is within the scope of discovery allowed by the federal rules. *See* Fed. R. Evid. 401 (defining relevance as information that would tend to make a fact of consequence in the action more or less probable). As demonstrated by the copy of the insurance application produced to Plaintiff and by the deposition of the Vessel's beneficial owner, the documentation in the possession of the Insurance Broker may bear on the history of the Vessel prior to the issuance of the Insurance Broker's policy. Therefore, it is not completely untethered from the timeframe or events that occurred in this case. Additionally, even though Defendants allege that they did not collect for fire damage before the policy went into effect, claims made by Defendants under the policy could still be relevant to pre-existing defects. Also, to the extent that the Insurance Broker has documents pertaining to "any insurance claims" as the subpoena specifies, the documentation could likewise be relevant to pre-existing defects or to Defendants' counterclaims. Plaintiff does not argue that "communications" are relevant and has agreed to limit the subpoena to requests 3 through 5. Therefore, I conclude that the Motion to Quash, as it pertains to the Insurance Broker subpoena, should be denied to the extent that the subpoena seeks the information in requests 3 through 5.

## IV.   **CONCLUSION**

Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. The Motion to Quash (DE 77) is **GRANTED IN PART AND DENIED IN PART**;

2. With respect to the Accountant, the Motion to Quash is **GRANTED** to the extent that Plaintiff seeks information beyond the specified tax returns and **DENIED** with respect to the requested tax returns. Further, Defendants' objections to discovery of the tax returns are **OVERRULED**;

3. With respect to the Insurance Broker, the Motion to Quash is **GRANTED** with respect to request numbers 1 and 2 and **DENIED** with respect to request numbers 3 through 5. Further, Defendants' objections to request numbers 3 through 5 are **OVERRULED**; and

4. The subject discovery shall be served upon Plaintiff no later than **March 1, 2021**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 25th day of February 2021.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge

Copies furnished counsel via CM/ECF